# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**BRENDA G. BLEVINS,**
**Claimant Below, Petitioner**

**FILED**
**January 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-299**          (JCN: 2021009597)

**PRINCETON COMMUNITY HOSPITAL ASSOCIATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Brenda G. Blevins appeals the July 15, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Princeton Community Hospital Association ("PCHA") timely filed a response.[1] Ms. Blevins did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which granted Ms. Blevins no permanent partial disability ("PPD") award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the events leading to this claim, in November of 2016, Ms. Blevins was treated by Kelsey Mills, PA-C, after being diagnosed with bronchitis. PA-C Mills suspected that Ms. Blevins had underlying asthma and referred her to an allergy and asthma specialist. Further, PA-C Mills recommended a pulmonary function test and a course of Singulair. On November 21, 2016, Ms. Blevins treated with Ryan T. Runyon, D.O. She complained of dyspnea/shortness of breath and wheezing. Dr. Runyon suspected a pulmonary embolism and recommended several tests, stating he would refer her to a pulmonologist if her condition did not improve.

On December 6, 2016, Ms. Blevins was examined by Tarun M. Kumar, M.D., at the Asthma & Allergy Center in Charleston, West Virginia. Ms. Blevins complained of shortness of breath and wheezing, and she indicated a twenty-five-year history of smoking one pack of cigarettes a day. Ms. Blevins stated that she quit smoking eight to ten years prior. Pulmonary function testing showed a normal airflow. Dr. Kumar diagnosed

---

[1] Ms. Blevins is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. PCHA is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

1

intermittent asthma, allergic rhinitis due to animal hair and dander, allergic rhinitis due to pollen, other allergic rhinitis, and cough.

Medical records from 2017 indicate that Ms. Blevins was referred to a pulmonologist for exertional dyspnea and that she continued to experience occasional wheezing. In February of 2018, Ms. Blevins returned to an allergy center, and complained of wheezing, shortness of breath, and coughing. Ms. Blevins was directed to complete her course of Prednisone and start Symbicort. By May of 2018, Ms. Blevins was experiencing an improvement of her symptoms, and she reported no wheezing or shortness of breath, although she continued to take Symbicort for asthma. In April of 2019, Ms. Blevins sought treatment for cough and allergies. She was diagnosed with bronchitis and asthma.

Turning to the instant claim, Ms. Blevins was exposed to and contracted COVID-19 while at work in October of 2020. Ms. Blevins was admitted to Charleston Area Medical Center on October 26, 2020, and was diagnosed with acute respiratory failure with hypoxia, SARS-associated coronavirus infection, pneumonia due to human coronavirus, history of cardiac arrhythmia, and asthma. An x-ray of Ms. Blevins' chest revealed no acute cardiopulmonary abnormality. Ms. Blevins presented to the emergency room at Princeton Community Hospital on October 29, 2020, and she was admitted through October 31, 2020. Ms. Blevins was diagnosed with pneumonia due to COVID-19, asthma, and respiratory failure with hypoxia.

On December 2, 2020, Ms. Blevins was treated by Rachel Ann Leonard, M.D., a pulmonologist at WVU Medicine. Ms. Blevins complained of persistent fatigue, dyspnea, cough, intermittent chest pains, and exertional dyspnea. Dr. Leonard noted that Ms. Blevins had undergone a Troponin EKG, which revealed that the left ventricle ejection fractions were preserved with the "only abnormality being hypertension." Dr. Leonard opined that Ms. Blevins' symptoms were related to post-COVID infection, superimposed on a history of asthma. Dr. Leonard suggested the addition of Spiriva to Ms. Blevins' Symbicort and Singulair regimen. Per Ms. Blevins' request, Dr. Leonard referred her to a cardiologist.

Ms. Blevins completed an Employees and Physician's Report of Occupational Injury dated January 26, 2021. The injury was listed as COVID-19. The physician's section of the form was completed by personnel at Tazewell Community Hospital and described the injury as exposure to a patient or staff with COVID-19.

By order dated February 15, 2021, the claim administrator held the claim compensable for exposure to COVID-19. By order dated October 26, 2021, the claim administrator added post COVID-19 condition as a compensable condition in the claim.

On September 28, 2022, Ms. Blevins underwent an independent medical evaluation ("IME") performed by George Zaldivar, M.D. Dr. Zaldivar conducted a six-minute walk test, and Ms. Blevins' results were normal. Dr. Zaldivar stated that Ms. Blevins did not

need any treatment with respect to her pulmonary system, and that there were no limitations to her pulmonary system. Further, Dr. Zaldivar noted that Ms. Blevins did have tachycardia, but opined that her symptoms may be due to her extreme anxiety. Dr. Zaldivar concluded that Ms. Blevins had 0% impairment according to the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*").

On October 17, 2022, Dr. Zaldivar authored a supplemental report regarding Ms. Blevins' claim. Dr. Zaldivar stated that the dyspnea of which Ms. Blevins complained is the result of anxiety or deconditioning, and that she does not have any pulmonary disease or condition that would cause any shortness of breath. Dr. Zaldivar opined that from a pulmonary standpoint, Ms. Blevins does not require any treatment or rehabilitation, and that her lungs had returned to normal after the previous episode of COVID-19.

By order dated October 26, 2022, the claim administrator closed the claim for permanent partial disability benefits, on the basis that Dr. Zaldivar's IME indicated that no permanent partial disability had resulted from the compensable injury.

On May 11, 2023, Bruce Guberman, M.D., performed an IME of Ms. Blevins. Ms. Blevins presented with post-COVID syndrome, and reported shortness of breath, chronic cough, chest pains, palpitations, joint symptoms, and sleep apnea. Dr. Guberman assessed history of COVID-19 infection due to exposure at work, post-COVID syndrome with shortness of breath, arthralgias, myalgias, rash, intermittent tachycardia, autoimmune syndrome, and sleep apnea, and documented hyperventilation at peak exercise with increased dead space and decreased oxygen diffusion. Dr. Guberman opined that the iCPET results were consistent with dyspnea, which was to a reasonable degree of medical probability, related to the long-term effects of the COVID-19 infection in her lungs. Further, Dr. Guberman stated that Ms. Blevins had reached MMI from the COVID-19 infection and post-Covid syndrome. Using the *Guides*, Dr. Guberman opined that Ms. Blevins had a 3% whole person impairment due to the compensable injury.

On September 21, 2023, Chuan Fang Jin, M.D., completed a medical evaluation report regarding Ms. Blevins' claim. Dr. Jin's assessment was a history of COVID-19 infection and post-COVID syndrome. Dr. Jin noted that Ms. Blevins had persistent symptoms involving multiple systems, was evaluated by many physicians/specialists, had extensive work-ups with minimal findings, and was diagnosed with post-COVID syndrome. Dr. Jin opined that the medical evidence indicated that Ms. Blevins had preexisting respiratory disease and asthma, which she received treatment for prior to her COVID-19 infection. Dr. Jin noted that Ms. Blevins had a normal pulmonary function test. Further, Dr. Jin opined that Ms. Blevins had reached MMI for the compensable injury, and using the *Guides*, she concluded that Ms. Blevins had no WPI due to the compensable injury. Regarding Dr. Guberman's finding of 3% WPI, Dr. Jin opined that the medications Ms. Blevins was taking could be discontinued if her symptoms improved. Further, Dr. Jin

noted that page 9 of the *Guides* regarding "Adjustments for Effects of Treatment or Lack of Treatment" pertains to medications for diseases that caused permanent loss of some function. Dr. Jin opined that Ms. Blevins' medications did not fall into this category.

By order dated July 15, 2024, the Board affirmed the claim administrator's order which granted Ms. Blevins no PPD award.[2] The Board found that Dr. Guberman's 3% impairment rating was not reliable, as he did not identify specific medications or treatment that had been authorized for the compensable COVID-19 and post-Covid syndrome. Further, the Board noted that Dr. Jin opined that Ms. Blevins had no WPI based upon a normal pulmonary function test, and she opined that Dr. Guberman's finding of 3% WPI was misplaced per the *Guides*. Based on the foregoing, the Board concluded that the evidence does not establish a greater WPI than the 0% PPD award granted by the claim administrator.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

---

[2] By separate order dated January 19, 2023, the Board also affirmed the claim administrator's separate orders in this claim, which denied reopening the claim for temporary total disability benefits, and denied authorization for a referral to a rheumatologist, a C-PAP machine, Melatonin, Spiriva inhaler, and Prednisone. This Court affirmed the Board's order in *Blevins v. Princeton Cmty. Hosp. Ass'n.*, No. 23-ICA-56, 2023 WL 5695428 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision). This decision was affirmed by the Supreme Court of Appeals of West Virginia in *Blevins v. Princeton Cmty. Hosp. Ass'n.*, No. 23-614, 2024 WL 4274135 (W. Va. Sept. 23, 2024) (memorandum decision).

4

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Ms. Blevins argues that the evidence establishes that she sustained more than a 0% whole person impairment due to the compensable injury.[3] Further, Ms. Blevins avers that the Board erred in finding that Dr. Guberman's report was not reliable because he did not list specific medications or authorized treatment. We disagree.

As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order, which granted no PPD award.

Here, the Board noted that Dr. Jin opined that Ms. Blevins had no WPI based upon a normal pulmonary function test, and she concluded that Dr. Guberman's finding of 3% WPI was misplaced per the *Guides*. Dr. Zaldivar also concluded that Ms. Blevins had 0% WPI using the *Guides*. The Board also noted that although Dr. Guberman stated that Ms. Blevins required medications to maintain her current level of functioning, he did not identify specific medications or treatment that had been authorized for the compensable COVID-19 and post-COVID syndrome. Based on the foregoing, the Board concluded that the evidence of record does not establish a greater WPI than the 0% PPD award granted by the claim administrator. Finding no error, we defer to the Board's credibility determinations. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

Accordingly, we affirm the Board's July 15, 2024, order.

Affirmed.

**ISSUED:** January 29, 2025

---

[3] We note that the compensability of COVID-19 is not at issue in this appeal.

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White